# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 1:06cr00064 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| JOHN CARSON COOPER, | ) | |
| Defendant | ) | By: PAMELA MEADE SARGENT |
| | ) | United States Magistrate Judge |

## *I. Background*

This case is before the court on the defendant's motion to exclude certain evidence or, in the alternative, to dismiss Count One of the indictment, (Docket Item No. 25), ("the Motion"). The Motion is before the undersigned magistrate judge by referral pursuant to Federal Rule of Criminal Procedure 59(b) and 28 U.S.C. § 636(b)(1)(B). The undersigned conducted a hearing on the Motion on February 20, 2007. As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

## *II. Facts*

The defendant, John Carson Cooper, has been charged in a three-count indictment with one count of manufacturing more than 100 plants or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii), and two counts of maintaining a place for the purpose of manufacturing marijuana, in violation of 21 U.S.C. § 856(a)(1). Mike Baker, a Special Agent with the Virginia State Police,

-1-

("VSP"), assigned to work with the local Drug Enforcement Administration, ("DEA"), Task Force, testified that he was contacted by the Abingdon Police Department on July 28, 2006, and notified that they had found a number of suspected marijuana plants growing in a residence located at 221 Morningside Lane, Abingdon, Virginia. Baker stated that he went to the residence and participated in the gathering of evidence from the residence.

Baker stated that the Abingdon Police Department seized 57 suspected marijuana plants from the Abingdon residence. Baker stated that based on his training and experience in identifying illegal drugs, he believed the plants to be marijuana plants. Included in these 57 plants, were several stems and roots found in potted soil, but stripped of all leafy material. Baker does not know the exact number of pots which contained only stems and roots. Baker stated that authorities found trails of soil and leafy material leading from the pots containing these stems and roots to an area in a bathroom where it appeared that someone had attempted to flush several marijuana plants down the toilet. Baker testified that, on the same date, authorities also seized 74 suspected marijuana plants from a residence located at 418 South Main Street, Marion, Virginia.

Baker stated that 10 random samples were taken from the plants found at the Abingdon location and 10 random samples were taken from the plants found at the Marion location. These samples were sent to a laboratory for analysis and are available for inspection and testing by the defense. Baker stated that each of these samples had tested positive for marijuana. Baker stated that samples were not taken of the 111 other plants found at the two locations. Baker stated that all of the plant

material seized, other than the 20 random samples collected and sent for analysis, was destroyed by law enforcement authorities on August 1, 2006. Baker stated that the plant material seized from the Abingdon location was destroyed pursuant to DEA policy and that the plant material seized from the Marion location was destroyed pursuant to VSP policy. Baker stated that these policies called for the prompt destruction of seized plant material. Baker stated that storage of plant material for an extended period of time raised health concerns as the plants began to rot. Also, he stated that most law enforcement agencies did not have room to store bulk quantities of plant material.

The indictment against the defendant was returned by the grand jury on October 17, 2006.

### *III. Analysis*

Through the Motion, defense counsel argues that the court should exclude any testimony or laboratory reports regarding the plant material recovered on July 28, 2006, from the Abingdon and Marion locations. Counsel argues that the destruction of this evidence prior to inspection and testing by the defense violates the defendant's rights under the Due Process Clause of the United States Constitution.[1] In the

---

[1] The Motion also alleges that the destruction violates "Federal Court Rule of Criminal Procedure 16, ... and regulations regarding the testing and preservation of evidence." Defense counsel has not identified any such regulations to the court. Therefore, the court will not address this issue further. Also, Federal Rule of Criminal Procedure 16 requires the government, upon a defendant's request, to allow inspection of objects "within the government's possession, custody, or control...." It is undisputed that the evidence at issue in this case has been destroyed and, therefore, is no longer in the government's possession, custody or control. Therefore, I find Rule 16 inapplicable.

-3-

alternative, counsel moves for the court to dismiss Count One of the indictment, which charges the defendant with manufacturing more than 100 marijuana plants. Since the evidence presented shows that the 20 random samples collected on July 28, 2006, are available for inspection and testing by the defense, the Motion will be construed by the court to seek exclusion of testimony and other evidence as to what the remaining 111 plants were.

In *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), the Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *See also U.S. v. Sanders*, 954 F.2d 227, 231 (4th Cir. 1992). Defense counsel concedes that the evidence before the court does not demonstrate any bad faith on the part of the investigating officers in the destruction of the plants at issue. Instead, defense counsel argues that, pursuant to Judge Glen M. Williams's opinion in *U.S. v. Belcher*, 762 F. Supp. 666, 671-73 (W.D. Va. 1991), a showing of bad faith is not necessary.

In *Belcher*, the defendants were charged with manufacturing marijuana, conspiracy to possess marijuana with intent to distribute, possession of marijuana with intent to distribute and using a firearm in furtherance of a drug trafficking crime. *See* 762 F. Supp. at 669. The defendants in *Belcher* moved to dismiss the charges against them on a number of grounds, including that state law enforcement officers had destroyed the alleged marijuana seized prior to their indictment on federal charges. In *Belcher*, law enforcement agencies performed no tests of any sort on the alleged marijuana before it was destroyed. *See* 762 F. Supp. at 668.

Judge Williams reasoned that the *Youngblood* bad faith requirement applied only in cases where the evidence destroyed was "potentially useful," and not in cases where the evidence destroyed is "absolutely crucial and determinative." 762 F. Supp. at 672. Judge Williams stated:

> Based on ... scrutiny of the facts and language in *Youngblood*, the court is persuaded that the Supreme Court did not intend for the *Youngblood* caveat to apply to every instance where State officials intentionally destroy evidence that is absolutely crucial and determinative to the prosecution's outcome.

*Belcher*, 762 F. Supp. at 672.

It does not appear that Judge Williams's decision in *Belcher* was appealed to the Fourth Circuit. Nor does it appear that any court has ever cited the decision with approval. Furthermore, the Supreme Court in *Illinois v. Fisher*, 540 U.S. 544, 547 (2004), recently rejected dismissal of a drug charge on due process grounds where the destroyed evidence provided the defendant's "only hope for exoneration" and was "essential to and determinative of the outcome of the case." The Court in *Fisher* stated:

> We have held that when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld. *See Brady v. Maryland*, 373 U.S. 83, ... (1963); *United States v. Agurs*, 427 U.S. 97, ... (1976). In *Youngblood*, by contrast, we recognized that the Due Process Clause "requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." ... We concluded that the failure to preserve this "potentially useful evidence"

-5-

Case 1:06-cr-00064-JPJ-PMS   Document 29   Filed 02/20/07   Page 5 of 8   Pageid#: 46

> does not violate due process *"unless a criminal defendant can show bad faith on the part of the police." ...*
>
> The substance seized from respondent was plainly the sort of "potentially useful evidence" referred to in *Youngblood*, not the material exculpatory evidence addressed in *Brady* and *Agurs*. At most, respondent could hope that, had the evidence been preserved, a ... test conducted on the substance would have exonerated him. ... But respondent did not allege, nor did the Appellate Court find, that the ... police acted in bad faith when they destroyed the substance. Quite the contrary, police testing indicated that the chemical makeup of the substance inculpated, not exculpated, respondent, ..., and it is undisputed that police acted in "good faith and in accord with their normal practice,".... Under *Youngblood*, then, respondent has failed to establish a due process violation.

540 U.S. at 547-48.

The evidence in this case, similar to that in *Fisher,* if it had been preserved, at most, could have been subjected to testing, which might have exonerated the defendant of the charge of manufacturing more than 100 plants of marijuana. That being the case, under *Fisher*, it should be viewed only as "potentially useful evidence," the destruction of which will not rise to the level of a due process violation without a showing of bad faith on the part of law enforcement officers.

## PROPOSED FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The defendant has produced no evidence that law enforcement officers acted in bad faith by destruction of the suspected marijuana plants at issue in this case prior to inspection and testing by the defense;

2. The evidence destroyed in this case should be viewed as "potentially useful evidence;" and

3. The destruction of evidence in this case did not violate the defendant's due process rights.

## RECOMMENDED DISPOSITION

Based upon the above-stated reasons, the undersigned recommends that the court deny the Motion.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C) (West 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and

recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within ten days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 20th day of February 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE