# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 1:06CR00064 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **JOHN CARSON COOPER,** ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant. ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, and Roy F. Evans, Jr., Special Assistant United States Attorney, Marion, Virginia, for United States; Nancy Dickenson, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

In this marijuana manufacturing case, where the only issue at trial was the number of plants manufactured by the defendant, I conclude that I erred in limiting cross examination of the government agent who seized the plants from the defendant. In addition to granting a new trial, I will also allow the defendant to renew his motion to exclude evidence of the seized plants, which were destroyed by the agent shortly after the defendant's arrest.

I

The defendant, John Carson Cooper, was indicted in 2006 for manufacturing marijuana, 100 plants or more, in violation of 21 U.S.C.A. § 841(a)(1) (West 1999)

(Count One), as well as two counts of maintaining a place for the purpose of manufacturing marijuana, in violation of 21 U.S.C.A. § 856(a)(1) (West 1999 & Supp. 2010) (Counts Two and Three). On the day of his trial, the defendant, who had been on bond, failed to appear. He was arrested over two years later and a superseding indictment was returned, adding a charge of failing to appear, in violation of 18 U.S.C.A. § 3146(a)(1) (West 2000) (Count Four).

Thereafter, Cooper pleaded guilty to Counts Two, Three, and Four, but went to trial on Count One, charging him with manufacturing 100 plants or more of marijuana. At trial, Cooper testified on his own behalf, admitting that he had manufactured marijuana, but claiming that he had only manufactured a total of 80 plants, consisting of 15 plants at his home in Abingdon, Virginia, and 65 plants at his landscaping business office in Marion, Virginia, some 30 miles away, for a total of 80 plants. In contrast, the government contended that it had discovered a total of 131 plants from both locations. At the conclusion of the trial, the jury found the defendant guilty of manufacturing 100 plants or more.[1]

---

[1] While I have not yet considered Cooper's sentence, based on a prior drug conviction, he faces a statutory mandatory minimum sentence of imprisonment of ten years for manufacturing 100 plants or more. 21 U.S.C.A. 841(b)(1)(B)(vii) (West 1999 & Supp. 2010). Without the mandatory minimum based on 100 plants or more, his advisory sentencing guideline range would be 33 to 41 months of imprisonment. U.S. Sentencing Guidelines Manual, ch. 5, pt. A, Sentencing Table (2009).

Local police first discovered the defendant's marijuana manufacturing operation on July 28, 2006. The plants were seized, taken to storage facilities, and photographed. Mike Baker, a special agent with the Virginia State Police and a member of the U.S. Drug Enforcement Administration's local drug task force, testified that he then took leaf material from each of the plants found at each location and combined them into 20 different "samples" — ten from each location — and sent them to the DEA laboratory for analysis. Baker and another state police agent, Jason Robinson, also counted each of the plants.

A few days later, on August 1, 2006, all of the plants were destroyed by the agents. For the plants seized from the Marion location, Baker obtained an "administrative destruction order" signed by a state police supervisor and the local state prosecutor. No such order was obtained for the destruction of the plants taken from the Abingdon location.

Agent Baker testified that based on his experience, the plants appeared to be marijuana and that there were no plants "that did not seem consistent with marijuana." (Tr. 100, June 29, 2009.) In addition, Investigator Chris Parks and Officer April Morgan, who assisted in the seizures at the Abingdon and Marion locations, respectively, testified that the plants appeared to be marijuana.

At trial, a DEA forensic chemist testified that he had received the 20 samples at the DEA laboratory and had removed a portion of each sample for analysis. That analysis determined that each portion was marijuana.

Cooper testified at trial that not all of the plants were marijuana and that some of the plants seized from his home in Abingdon were not marijuana, but were either rhododendron or tomato plants. As to the Marion location, he agreed that all of the plants there were marijuana.

During the cross examination of Agent Baker, defense counsel sought to introduce an official DEA internal memorandum, entitled "Sampling, Submission and Storage of Fresh Marijuana Plant Material Seized as Evidence by DEA from Grow Operations," dated February 16, 2000 ("the DEA Memorandum"). The DEA Memorandum had just been disclosed to the defense, although its existence had been known to defense counsel and had been requested prior to trial. After hearing argument by counsel outside of the presence of the jury, I refused to admit the exhibit and did not allow it to be used in the defendant's cross-examination of Agent Baker.

Prior to trial, the defendant moved to exclude evidence relating to the plants seized (or alternatively to dismiss Count One) on the ground that the plants had been destroyed without an opportunity for the defendant to view, inspect, test, or photograph them. A magistrate judge conduced an evidentiary hearing on the motion,

at which Agent Baker testified. Defense counsel conceded that there was no evidence that the destruction of the plants was made in bad faith, and the magistrate judge recommended that the motion be denied, which it was. *United States v. Cooper*, No. 1:06CR00064, 2007 WL 777981 (W.D. Va. Mar. 11, 2007).

In his present motion, Cooper requests a new trial on the following grounds: (1) that the court erred in refusing to allow Agent Baker to be cross-examined regarding the DEA Memorandum; (2) that the defense motion to exclude the seized plants should have been granted because the DEA Memorandum shows that Agent Baker did not act in good faith in his handling of the seized plants; and (3) that the government's failure to provide the defendant with a copy of Agent Baker's grand jury testimony prior to trial violated the defendant's due process rights.

The facts surrounding these contentions are as follows.

In the pretrial hearing before the magistrate judge, Agent Baker was asked how it was decided what was sent to the DEA laboratory for analysis. Baker replied:

> The DEA regulations which I followed provide for ten random samples taken from the plants. Now, those samples were taken from the leaf structure of the plant. Just random samples from ten individual plants. We included the larger plants and then some of the smaller plants in those random samples and then that was sent to the lab.

(Tr. 14, Feb. 20, 2007.) He was also asked about the destruction of the plants after the samples had been taken:

> Q   Why were those other plants destroyed?
>
> A   We're not able to store bulk marijuana for long term. It becomes a health issue when the plants begin to rot. Per DEA regulations, the remainder of the bulk marijuana was destroyed.
>
> Q   Which DEA regulation are you referring to, Mr. Baker?
>
> A   It's a DEA memorandum, ma'am, concerning the seizure of bulk marijuana.
>
> . . . .
>
> Q   With reference to this DEA memo, do you have a copy of that memo?
>
> A   I do not.

(*Id.* at 5, 20.)

Following the hearing before the magistrate judge, defense counsel requested that the government supply her with a copy of the DEA Memorandum, but government counsel declined.

At trial, on direct examination, Agent Baker first testified, as he had at the pretrial hearing, that "a random sampling was taken from ten different plants." (Tr. 92, June 29, 2009) On cross-examination, however, Baker admitted that he had

"misspoke" about the sampling process. (*Id.* at 119.) In fact, he stated, there were ten samples taken from each location, but those samples were composed of more than ten separate plants. While he could not say how many separate plants were contained in each sample, he stated that he attempted to pull leaves from each plant, although it was possible that leaves from the same plant went into more than one sample. (*Id.* at 115.)

Following Agent Baker's testimony, the government for the first time supplied defense counsel with a copy of the DEA Memorandum, which counsel then sought to introduce and use in further cross-examination of Baker.

The DEA Memorandum provided that random samples from a marijuana grow are to be taken in the following manner: "Ten samples consisting of approximately ten grams each will be collected from ten random plants." (DEA Memorandum 2.) Counsel argued that the DEA Memorandum should have been admitted because it described a process different from the procedure actually followed. The request was denied, for the following reasons:

> THE COURT: How does that have anything to do with the issues of this case? Assuming, assuming that the, that the procedure outlined here in this internal memo was that he was to take samples from ten random plants, and he says that he took samples from virtually all of the plants, I mean, what difference does that make? In fact, the DEA procedure here would be more prejudicial to your

client because there were a lot more than ten plants here. So, how would it make any difference?

. . . .

Well, I'm going to exclude the memo. I think it would only serve to confuse the jury. Again, there's nothing that I see in the memo that really has anything to do with the issues in this case. . . ."

(Tr. 27-29, June 30, 2009.)

While the defense had moved prior to trial for production of any grand jury testimony, it did not receive any such production from the government. The government concedes that it failed in its duty in this regard and represents that the failure was unintentional. The transcript of Agent Baker's grand jury testimony, which has now been produced to the defendant, shows that when he was asked how many total marijuana plants had been found, he replied,

> A    It was in the neighborhood of a hundred and forty. I'd have to do the math, which I'm not real good at.
>
> Q    It was over a hundred?
>
> A    Yes, sir, well over a hundred.

(Def.'s Mot. New Trial, Ex. G.)

II

On the motion of the defendant, a new trial may be granted "if the interest of justice so requires." Fed. R. Crim. P. 33(a).

With the opportunity to now review the DEA Memorandum outside of the pressure of trial, I find that I erred in excluding it and preventing its use in the cross-examination of Agent Baker. While harmless error should be disregarded, Fed. R. Crim. P. 52(a), I find that the defendant was substantially prejudiced by this error, particularly in conjunction with the government's failure to provide him with Agent Baker's grand jury testimony. *See United States v. Belyea*, 159 F. App'x 525, 531 (4th Cir. 2005) (unpublished) (stating that exclusion of evidence at trial was not harmless where "[w]e simply lack the requisite assurance that any error did not substantially sway the jury's judgment") (internal quotation marks, alteration, and citation omitted).

Agent Baker's testimony as to the number of plants and their identity as marijuana was critical to the government's case. It is true, as I indicated at trial in refusing the exhibit, that Baker's actual method of sampling, even though contrary to the mandated DEA procedure, might be fairer to the defendant, since it theoretically provided a more reliable sampling of the many plants involved. Nevertheless, the DEA Memorandum would have allowed the jury to better judge

Agent Baker's credibility, since he had repeatedly testified that he had followed the specific procedure set forth in the memorandum, when he clearly did not. The number of marijuana plants was the only issue in the case, and Agent Baker's testimony was central to the government's proof in that regard.

Moreover, Agent Baker's grand jury testimony, where he estimated a different number of plants and disparaged his own ability to make such an estimate, if known to the defense, would have allowed an additional significant basis for cross-examination. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972) (holding that impeachment evidence concerning government witness must be disclosed).

Finally, and importantly, the DEA Memorandum raises questions as to the necessity for the destruction of the plants seized before the defense had an opportunity to view, test, and count them. In this respect, the DEA Memorandum provides that

> Upon completion of sampling and photographing, the remaining marijuana evidence seized . . . will be promptly destroyed in accordance with procedures established in [the DEA Agents Manual]. . . . These destruction guidelines must be strictly followed due to limited storage space for bulk evidence and to guard against defense motions for reweighs and recounts of plant material.
>
> If storage becomes necessary for the remaining plants, every effort should be made to air dry this plant material . . . . Fresh plant material placed in a heat-sealed plastic evidence envelope without first being properly dried will quickly become toxic.

(DEA Memorandum 2.)

In his testimony at the pretrial hearing, Agent Baker stated that destruction of the plants was required by the DEA Memorandum because "[i]t's just not stable to store" (Tr. 18, Feb. 20, 2007), and "[w]e're not able to store bulk marijuana for long term [because] [i]t becomes a health issue when the plants begin to rot" (*id*. at 5). At trial, he testfied as follows:

> Q   Now, you chose to destroy all the plant evidence in this case except that which you believe –
>
> A   I didn't choose to, no, ma'am. I followed DEA regulations.
>
> Q   Don't the DEA regulations say the evidence may be destroyed?
>
> A   No, ma'am, I believe it says shall be destroyed. We do not have the facilities for bulk evidence storage.

(Tr. 108, June 29, 2009.)

In fact, the DEA Memorandum indicates that marijuana may be stored, if it is air dried. More importantly, the DEA Memorandum states as a reason for prompt destruction, "to guard against defense motions for reweighs and recounts of plant material." (DEA Memorandum 2.) In other words, as it might be construed, a reason for prompt destruction of the evidence is to prevent the defendant from credibly contesting the agent's calculation of the number of marijuana plants. That reason is a far cry from Agent Baker's justification for destroying the plants seized.

Of course, the DEA Memorandum was not something that the defense injected into the case. Agent Baker brought it up, both in the pretrial hearing and at trial, as the justification for his handling of the crucial evidence in the case. Had the DEA Memorandum been allowed, the defendant would have been able to cross-examine Agent Baker on these important topics, all of which go to the essence of the government's case. Of course, it is possible that the jury would have convicted Cooper even if the defense could have attacked Agent Baker's testimony in these ways, but I am not convinced that it would not have made a difference in the outcome.

For these reasons, I will grant the defendant a new trial. In addition, I will allow the defendant to renew his pretrial motion to exclude, and if the motion is renewed, grant a new evidentiary hearing at which the court will have the benefit of the DEA Memorandum.

III

For the reasons stated, it is **ORDERED** as follows:

1. The Defendant's Motion for New Trial (DE 115) is GRANTED;
2. The clerk will set the case for trial as soon as convenient; and

3. The defendant is granted leave to file a renewed Motion to Exclude Evidence Or in the Alternative to Dismiss Count One of the Indictment, provided it is filed within 14 days of this Order.

ENTER: June 28, 2010

/s/ JAMES P. JONES
Chief United States District Judge